United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

M.L.D.,

Plaintiff,

v.

SSA COMMISSIONER, et al.,

Defendants.

Case No. 25-cv-07427-LB

**ORDER GRANTING PLAINTIFF'S MOTION, DENYING DEFENDANT'S CROSS-MOTION, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Re: ECF Nos. 10, 11

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Title II Social Security disability-insurance benefits.[1] The ALJ determined that the plaintiff was capable of performing past relevant work as a community-service worker.[2] The parties moved for summary judgment. The matter is submitted for decision without oral argument. Civil L.R. 16-5. The court remands the case for further administrative proceedings.

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Administrative Record (AR) 14–33.

**GOVERNING LAW**

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates suit within sixty days of notice of the decision. The court's review is limited to whether substantial evidence supports the Commissioner's decision and whether the decision comports with relevant legal standards. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla," but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). If the evidence in the administrative record supports both the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

A claimant is considered disabled if (1) she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)–(B). The Social Security regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The five steps are as follows:

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *Id.* § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *Id.* § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the

> impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *Id.* § 404.1520(a)(4)(iii).
>
> **Step Four.** Considering the claimant's residual functional capacity, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(iv).
>
> **Step Five.** Considering the claimant's residual functional capacity, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *Id.* § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled.

*Tackett*, 180 F.3d at 1098–99 (citing 20 C.F.R. § 404.1520). For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Id.* at 1098.

## STATEMENT

The plaintiff is currently fifty-eight years old, has a high-school degree, and worked in the past as a community-services worker for an organization that provided mental healthcare to veterans.[3] She is a veteran and was treated for PTSD. In 2023, she had a service-connected disability rating of one-hundred percent.[4] She stopped working after she was hospitalized with a severe case of pneumonia in August 2023. She applied for disability-insurance benefits in October 2023, alleging a disability onset date of August 26, 2023.[5] Her application was denied on initial review and reconsideration.[6] An ALJ conducted a hearing on her case in April 2025 and issued an unfavorable decision in May 2025.[7]

---

[3] AR 20, 27, 190–91.

[4] AR 192, 468.

[5] AR 228, 441.

[6] AR 94–98, 106–09.

[7] AR 14–28, 34–67.

The ALJ held that (1) the plaintiff's low-back pain, knee injury, diabetes mellitus, and asthma were severe impairments, (2) cirrhosis and cardiomegaly of the liver, depression, PTSD, and depression were nonsevere impairments, (3) alcohol abuse was not an impairment, and (4) no impairment met the requirements of a listed impairment. She determined that the plaintiff retained a residual-functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c), except that (1) she can stand and walk six hours total and sit for eight hours total in an eight-hour work day, (2) she can perform all posturals frequently except balancing is unlimited, and (3) climbing ladders, ropes, and scaffolding can be performed at a maximum of occasional, with no exposure to concentrated levels of environmental irritants. The ALJ ultimately decided that the plaintiff was capable of performing past relevant work as a community service worker at Specific Vocational Preparation level (SVP) 6.

In July 2025, the Appeals Council denied review of the ALJ's decision.[8] The plaintiff timely appeals.

**ANALYSIS**

The plaintiff contends that the ALJ erred by (1) failing to provide clear, convincing, and well-supported reasons for discounting the plaintiff's symptom testimony, (2) finding that her mental impairments were nonsevere and failing to consider the plaintiff's mental limitations when determining her RFC, (3) failing to properly evaluate the medical opinions of record, and (4) failing support her finding that the plaintiff could return to past relevant work with substantial evidence.[9] The court remands for further proceedings.

### 1. The Plaintiff's Symptom Testimony

The ALJ erred in assessing the plaintiff's subjective testimony about her symptoms.

The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but rejected her testimony regarding the intensity,

[8] AR 1–6.

[9] Pl.'s Br. – ECF No. 10 at 6.

United States District Court
Northern District of California

persistence, and limiting effects of her pain and mental-health symptoms on the grounds that they were inconsistent with the medical evidence and her activities of daily living. The ALJ summarized the medical evidence and determined that the plaintiff (1) could take care of her own personal needs, (2) can do all household chores, including vacuuming, mopping, sweeping, dusting, laundry, and dishes, (3) can play with her dog and cat, watch television, listen to music, take classes on mindfulness, play pickleball, and swim, (4) had volunteered for a Hearing Voices organization, and (5) took a trip to Las Vegas.[10]

The plaintiff contends remand is required because the ALJ (1) did not specifically identify evidence that was inconsistent with the plaintiff's allegations, (2) did not consider evidence and testimony from the plaintiff and her father that the plaintiff performed daily activities only with limitations and breaks and was unable to perform them consistently (such as stopping some activity and doing others only in short spurts and with her daughter's help), (3) did not address examining doctors' reports that she "presented as unkempt and fatigued, and immature for her age level" and that her insight and judgment "may be compromised due to psychiatric symptoms," and (4) erroneously identified the treatment for the plaintiff's back pain as conservative.[11] The Commissioner responds that the ALJ's decision was supported by substantial evidence because it relied on a significant number of normal findings in the record.[12]

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (cleaned up); 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear, and convincing reasons" for rejecting the

---

[10] AR 21–26.

[11] Pl.'s Br. – ECF No. 10 at 6–13.

[12] Def.'s Br. – ECF No. 11 at 2–5.

claimant's testimony regarding the severity of her symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (for meaningful appellate review, the ALJ must explain her reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (cleaned up); *see* 20 C.F.R. § 416.929. The court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

The ALJ did not sufficiently assess the plaintiff's credibility. She did not acknowledge evidence that the plaintiff could perform daily activities only in short spurts, that she required her daughter's assistance to perform them, and that she had ceased many of the activities. By failing to address this testimony, the ALJ failed to explain why the testimony was not credible and what facts in the record led to that conclusion. *Smolen*, 80 F.3d at 1284. Without providing an analysis for a decision to discount this testimony, the ALJ's decision is not supported by substantial evidence.

**2. The Plaintiff's Mental Impairments — Steps Two and Five**

The ALJ erred by failing to consider possible limitations due to the plaintiff's mental impairments, regardless of severity.

At step two, the ALJ found that the plaintiff suffered from four severe impairments (low-back pain, knee injury, diabetes mellitus, and asthma) but that her depression and PTSD, considered singly and in combination, were nonsevere because they did not cause more than a minimal

limitation in the plaintiff's ability to perform basic mental work activities.[13] The ALJ determined that the plaintiff had mild limitations in every mental functional area: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ identified the plaintiff's daily activities as evidence that the plaintiff suffered only mild limitations, concluding that,

> The records do not support the requisite impact and duration. [The plaintiff] has noted situational stress with deaths and bereavement. Per treating records, she has had monthly ketamine with good success. There is a noted remote history of suicide attempt, by overdose, over 25 years ago during a period of methamphetamine and alcohol addiction . . . however, this appears to be a single remote event.[14]

When assessing the plaintiff's RFC, the ALJ addressed the plaintiff's mental impairments: "Although the claimant reported mental symptoms, she typically had good insight, judgement and a logical thought process. . . . On August 10, 2023, her mood disorder was noted to be in remission."[15]

The plaintiff contends that the ALJ erred in finding that the plaintiff's depression and PTSD were nonsevere mental impairments at step two and then not accounting for the functional limitations stemming from those mental disorders when assessing the plaintiff's RFC and evaluating step five. At step two, the ALJ ignored medical records that the plaintiff appeared unkept and fatigued, had a restricted affect, dysphoric mood, possibly limited insight and judgment, and moderate difficulty handling the stress of an interview. An examining doctor and a psychiatric consultant opined that the plaintiff had at least moderate mental limitations. The ALJ did not consider the impact of the plaintiff's mental limitations on her RFC, whether mild or severe, when determining that she has the RFC to perform medium work without limitations based on her mental impairments. The plaintiff, a veteran, worked with veterans to provide mental-health care and reported that loss of clients at work left her feeling overwhelmed, worn out, and fearful of

[13] AR 20.

[14] AR 20–21.

[15] AR 23.

United States District Court
Northern District of California

additional losses, and that she had poor sleep, poor energy, and a low mood and found it "very hard to go work," among other issues.[16]

The Commissioner contends that the ALJ reasonably assessed that the plaintiff's mental impairments were nonsevere by determining that the record did not support the requisite impact and duration for a severe impairment and noting that the plaintiff experienced situational stress with deaths and bereavements but had success with monthly ketamine. The Commissioner argues that any error at step two is harmless because the ALJ considered the mental impairments when assessing her RFC.[17]

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen*, 80 F.3d at 1289–90. The ALJ must consider the record as a whole, including evidence that both supports and detracts from its final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1522. "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (cleaned up); *accord Monteith v. Comm'r of Soc. Sec.*, No. 18-cv-04481-DMR, 2020 WL 789823, at *2 (N.D. Cal. Feb. 17, 2020). To determine the severity of a mental impairment specifically, the ALJ must consider four broad functional areas: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (citing SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). "An ALJ

[16] Pl.'s Br. – ECF No. 10 at 7–8, 13–17; Pl.'s Reply – ECF No. 12 at 5–7.

[17] Def.'s Br. – ECF No. 11 at 5–7.

has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Escamilla v. Berryhill*, No. 17-cv-01621-BAS-JMA, 2018 WL 2981156, at *6 (S.D. Cal. June 14, 2018) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

In assessing a claimant's RFC, an ALJ must consider a claimant's allegations of limitations stemming from severe and nonsevere medically determinable impairments. *See* 20 C.F.R. § 416.945(e); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

The ALJ's evaluation was unsupported by substantial evidence and legally erroneous because it failed to address substantial medical and testimonial evidence of the plaintiff's mental health that indicated "more than a minimal limitation in [her] ability to do basic work activities." 20 C.F.R. 404.1520a(d)(1). The ALJ selectively addressed only evidence weighing in favor of her findings without addressing how she weighed other evidence suggesting more than minimal limitations. For example, when assessing the functional area of "interacting with others," the ALJ highlighted information about the plaintiff's participation in community events and use of public transportation without addressing a report that the plaintiff "would become aggressive or break down crying when stressed," or the plaintiff's claim that she could not take a bus by herself.[18] This is impermissible cherry-picking of facts. *Escamilla*, 2018 WL 2981156, at *6.

Furthermore, the ALJ did not adequately consider the plaintiff's allegations regarding limitations based on her mental impairments, whether severe or nonsevere, when assessing the plaintiff's RFC. Where the ALJ determined that the plaintiff had at least mild limitations due to her mental impairments at step two, she was required to account for those limitations when determining the plaintiff's RFC. *Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012) ("Regardless of its severity, however, the ALJ was still required to consider [the plaintiff's] PTSD when he determined [the plaintiff's] RFC. . . . Further, while the ALJ was free to reject [the plaintiff's] testimony as not credible, there was no reason for the ALJ to disregard his own finding that . . . nonsevere PTSD caused some 'mild' limitations . . . ."). The ALJ included only a short statement dismissing the

[18] AR 271–78, 2413.

United States District Court
Northern District of California

plaintiff's mental-health symptoms based on a judgment that the plaintiff "typically had good insight, judgement and a logical thought process" and a single note in her record noting that her mood disorder was in remission in 2023. She ignored records in 2024 reporting that the plaintiff's PTSD symptoms had been recently activated and that she had moderate major depressive disorder and treatment-resistant depression.[19] This is reversible error. *Kari P. v. Saul*, No. 19-cv-00956-JLB, 2020 WL 6889202, at *8 (S.D. Cal. Nov. 23, 2020) (failure to include mild mental limitations found at step two in the RFC assessment is reversible error) (collecting cases).

The ALJ's step-two determination and RFC assessment failed to assess or include all limitations and thus require remand.

### 3. Evaluation of Medical Opinions

The plaintiff contends that the ALJ erred in evaluating the medical opinions in the record because she failed to articulate explanations supported by substantial evidence for rejecting the majority of the medical opinions.[20] The Commissioner contends that the possibility of reasonably reaching different conclusions about the persuasiveness of medical opinions does not make an ALJ's evaluation unsupported by substantial evidence and is not a sufficient ground for reversal.[21] Remand is justified because the ALJ failed to properly evaluate the medical opinions.

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (cleaned up). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." (cleaned up)). An ALJ must articulate how

[19] AR 23, 2293–94, 2374, 2719.

[20] Pl.'s Br. – ECF No. 10 at 17.

[21] Def.'s Br. – ECF No. 11 at 11.

he or she considered every medical opinion and how persuasive he or she finds each.[22] *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020); 20 C.F.R. § 416.920c(b). Persuasiveness is evaluated based on five factors: "1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) 'other factors.'" *V.W.*, 2020 WL 1505716, at *13 (citing 20 C.F.R. § 416.920c(a)–(c)); *Woods*, 32 F.4th at 792 (factors include "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records").

Supportability and consistency are the two most important factors, and the ALJ is required to address them. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Kitchen*, 82 F.4th at 739 (cleaned up).

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Unlike with supportability and consistency, the ALJ is not normally required to explain how he or she considered the other factors. *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b)(2). But the ALJ is required to do so where "two or more medical opinions or prior

[22] The Social Security Administration promulgated new regulations governing an ALJ's consideration of medical opinions, effective March 27, 2017. The new framework "eliminate[s] the physician hierarchy, deference to specific medical opinions, and assigning weight to a medical opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (cleaned up); 20 C.F.R. § 416.920c(a). Likewise, the Ninth Circuit's previous "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion" is "incompatible with the revised regulations." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

The medical opinions fall into two categories when evaluating the plaintiff's RFC: opinions assessing the plaintiff's mental functioning and opinions assessing her physical functioning.

### 3.1 Medical Opinions Assessing the Plaintiff's Mental Functioning

The ALJ evaluated three medical opinions (by Drs. Weiss, Chandler, and Dalton) when assessing the plaintiff's mental function.

***Hillary Weiss, PhD.*** Dr. Weiss, a psychological consultant who did not examine the plaintiff, opined in January 2024 that the plaintiff did not have a severe mental impairment. The ALJ found this assessment to be persuasive because it was "supported by notes from the file" and consistent with the plaintiff's daily living activities, "such as her ability to volunteer, be in a new romantic relationship and live with her daughter and her daughter's boyfriend."[23]

***Jacklyn Chandler, PhD.*** Dr. Chandler is a psychological consultative examiner who evaluated the plaintiff in May 2024 and assessed that the plaintiff (1) has possible mild to moderate difficulty adapting to changes in a work setting, (2) would likely have moderate difficulty making judgments on complex work-related decisions, (3) had moderate difficulty enduring the stress of the interview, and (4) and has a moderately to markedly impaired ability to interact with the public, supervisors, and coworkers. The ALJ found Dr. Chandler's assessment to be of limited persuasiveness because it was supported by one exam only, treatment and records "do not support as remarkable," the plaintiff had ketamine treatments with good success, and it was inconsistent with the generally normal mental-status exams and the claimant's ability to do weekly volunteer work, travel to Las Vegas, and be in a new romantic relationship on October 26, 2023.[24]

***B. Dalton, Psy.D.*** Dr. Dalton is a state agency psychological consultant who opined in October 2024 that the claimant could perform simple and semi-skilled (detailed but not complex) work in settings with predictable tasks and routines. The ALJ found Dr. Dalton's assessment was not

---

[23] AR 26.

[24] AR 25–26.

United States District Court
Northern District of California

persuasive because it was not supported by an in-person examination and was inconsistent with the normal mental-status exams and the plaintiff's ability to play pickleball and volunteer.[25]

The plaintiff contends that the ALJ did not properly evaluate these medical opinions because she failed to articulate an explanation supported by substantial evidence, and instead (1) inconsistently evaluated persuasiveness based on frequency of examinations by discounting Dr. Chandler's opinion because it was based on "one exam only," rejecting Dr. Dalton's opinion because it was not supported by an in-person exam, but accepting Dr. Weiss's opinion even though Dr. Weiss did not examine the plaintiff, (2) relied on Dr. Weiss's opinion over Dr. Dalton's opinion where Dr. Weiss's opinion was based on a more limited record than Dr. Dalton's (Dr. Weiss's opinion pre-dated Dr. Chandler's May 2024 examination of the plaintiff), and (3) relied on cherry-picked evidence (of the plaintiff's swimming and playing pickleball, a Las Vegas trip, and romantic relationship) while ignoring evidence that the plaintiff could not carry out activities consistently.[26] The Commissioner counters that the ALJ's decision to discount Dr. Chandler's and Dr. Dalton's opinions was based on valid considerations amounting to substantial evidence.[27]

The ALJ did not perform a proper evaluation of the medical opinions concerning the plaintiff's mental functioning. To reject a medical opinion as inconsistent with the medical record, an "ALJ must do more than offer [her] conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). An "ALJ may not substitute her opinion for that of a medical doctor." *Rouben J. v. Bisignano*, No. 25-cv-02343-SI, 2026 WL 413605, at *10 n.5 (N.D. Cal. Feb. 13, 2026) (cleaned up). Here, the ALJ relied on conclusory statements that Dr. Chandler's and Dr. Dalton's opinions were inconsistent with normal mental-status exams in the record without pointing to the specific contradictory records or explaining how they are inconsistent in a manner that allows judicial review. The ALJ also failed to explain how activities such as traveling to Las Vegas, entering a romantic relationship, or living with a daughter and her boyfriend are inconsistent with a mild to

---

[25] AR 26.

[26] Pl.'s Br. – ECF No. 10 at 17–20.

[27] Def.'s Br. – ECF No. 11 at 7–8.

United States District Court
Northern District of California

moderate difficulty adapting to changes in a work setting or moderate difficulty making judgments on complex work-related decisions. The ALJ disregarded evidence in the record that the plaintiff was not able to engage in activities like swimming or pickleball consistently. The ALJ also failed to justify relying on an opinion that did not consider later-submitted evidence.

### 3.2 Medical Opinions Assessing the Plaintiff's Physical Functioning

The ALJ evaluated five medical opinions (by Drs. Widger, Gong, Lewis, Pham, and Pan) assessing the plaintiff's physical function:

***Derek Gong, M.D.*** Dr. Gong is a consultative examiner who examined the plaintiff in January 2024 and assessed that the plaintiff could (1) stand or walk six out of eight hours, thirty minutes at a time, and could sit for eight hours with normal breaks, (2) lift up to twenty pounds continuously and up to fifty pounds occasionally, and (3) perform all postural activities occasionally. The ALJ found Dr. Gong's assessment partially persuasive because it was supported by a direct exam and consistent with a negative exam, but it was only one exam, and the plaintiff's ability to swim and play pickle ball supported less restrictive postural limitations.[28]

***Rose Lewis, M.D.*** Dr. Lewis is a consultative examiner who examined the plaintiff in August 2024 and assessed that she could stand and walk up to six hours, sit without limitations, and lift and carry up to twenty pounds occasionally and ten pounds frequently, with some other limitations such as not working around extreme temperatures. The ALJ found Dr. Lewis's assessment to be partially persuasive because it was supported by a direct exam and consistent with negative findings and other evidence, but determined that the plaintiff's full strength, ability to get on the examination table, and ability to perform tandem and toe heel walking supported less restrictive limitations. The ALJ stated that Dr. Lewis's assessment of lifting limitations was overly restrictive and inconsistent with a previous examination where the plaintiff demonstrated 5/5 strength.[29]

***H. Pham, M.D., and A. Pan, D.O.*** Drs. Pham and Pan assessed in February 2024 and October 2024, respectively, that the plaintiff could (1) occasionally and frequently lift or carry twenty-five

[28] AR 23–24.

[29] AR 24.

pounds, (2) stand, walk, and/or sit for a total of about six hours per eight-hour workday, (3) frequently climb ramps or stairs, (4) occasionally climb ladders, ropes, and scaffolds, and (5) frequently stoop, kneel, crouch, and crawl. Dr. Pan also assessed that the plaintiff could perform all postural activities frequently and had some environmental limitations (such as avoiding exposure to fumes). The ALJ found both doctors' opinions partially persuasive because they were supported by the expanded record and consistent with the records from examining doctors, but determined that they were overly restrictive as to lifting limitations "in the absence of any abnormalities in the upper extremities" and inconsistent with the plaintiff's improved medical condition, including her weight loss and discontinuance of diabetes medication. The ALJ noted that the plaintiff's ability to swim and play pickleball was consistent with an ability to lift and carry up to fifty pounds.[30]

***Judy Widger, M.D.*** Dr. Widger was the plaintiff's treating doctor for one year. In May 2025, she assessed that, due to the plaintiff's knee and back pain, combined with emotional factors, the plaintiff could stand or walk for less than two hours and sit for about four hours, could never lift above twenty pounds, and needed to elevate her legs higher than her heart for fifty percent of the day, among other limitations. The ALJ rejected Dr. Widger's assessment because (1) she gave minimal explanation for her opinions and reviewed (but did not reference) VA records, (2) her assessment was inconsistent with other examining doctors' assessments, and (3) she failed to provide objective evidence to support her opinion. The ALJ noted that the plaintiff had received conservative treatment, the assessment was "inconsistent with the imaging evidence" where a physician's assistant had noted that the plaintiff's pain was worse than one would expect given the imaging, and the plaintiff did not use an assistive device at the consultative examination.[31]

The plaintiff contends that the ALJ erred in evaluating these medical opinions because (1) the ALJ's claim that Dr. Widger did not provide objective evidence to support her opinion is inaccurate given that Dr. Widger referenced findings of a chronic left-knee effusion, trigger points in the low back, a reduced range of motion in the left knee and low back, abnormal gait, and

[30] AR 25.

[31] AR 24–25.

tenderness and swelling in her assessment, (2) the ALJ cherry-picked evidence by relying on one physician assistant's statement (that the plaintiff's plain was worse than would be expected given imaging) to discredit Dr. Widger's opinion, (3) the ALJ did not explain how not using an assistive device is evidence of non-disability, (4) the ALJ inaccurately treated upper extremity impairments as necessary for finding limited lifting capacity, (5) the ALJ improperly substituted her opinion for medical opinions by assessing that the plaintiff could lift fifty pounds, contrary to all the medical opinions, and (6) the ALJ failed to analyze conflicting evidence regarding the plaintiff's daily activities when using them to reject medical opinions.[32] The Commissioner responds with evidence supporting the ALJ's findings, contending that any flaw in the ALJ's analysis of Dr. Gong's opinion regarding postural limitations is harmless because the three jobs the ALJ identified do not require postural activity and the possibility of reasonably reaching different conclusions about the medical opinions' persuasiveness is not grounds for reversal.[33]

The ALJ did not perform a proper evaluation of the medical opinions concerning the plaintiff's physical functioning. To reject a medical opinion as inconsistent with the medical record, an "ALJ must do more than offer [her] conclusions." *Embrey*, 849 F.2d at 421. An "ALJ may not substitute her opinion for that of a medical doctor." *Rouben J.*, 2026 WL 413605, at *10 n.5 (cleaned up). As the plaintiff points out, the ALJ's discounting of Dr. Widger's opinion was based in part on conclusory statements contrary to the record, such as stating that Dr. Widger "failed to provide any objective evidence by reference to support her opinion" despite Dr. Widger identifying "left knee effusion chronically; MRI; trigger points low back" as the clinical findings and test results showing the plaintiff's medical impairments.[34] The ALJ identified fifty pounds as the weight that the plaintiff can lift despite multiple medical opinions assessing weight limitations of twenty-five pounds or less continuously, with only one examiner (Dr. Gong) opining that the plaintiff could lift up to fifty pounds occasionally. The ALJ substituted her opinion for the medical opinions and

[32] Pl.'s Br. – ECF No. 10 at 21–23.

[33] Def.'s Br. – ECF No. 11 at 8–11.

[34] AR 24–25, 2930.

United States District Court
Northern District of California

failed to address evidence contradicting the evidence she relied on for some findings (such as playing pickleball and swimming).

**4. Return to Past Relevant Work**

Because the order remands for reevaluation of the evidence used as the basis for the ALJ's finding that the plaintiff can return to her past relevant work as a community-services worker, the ALJ must reevaluate this determination on remand.

**CONCLUSION**

The Commissioner's decision is reversed, and the case is remanded for further administrative proceedings consistent with this order. This resolves ECF Nos. 10 and 11.

**IT IS SO ORDERED.**

Dated: July 27, 2026

LAUREL BEELER
United States Magistrate Judge